

FILED
John E. Triplett, Acting Clerk
United States District Court

By casbell at 10:47 am, Sep 03, 2020

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

KEVIN M. AVELLA,

       Plaintiff,

   v.

ANDREW SAUL, Commissioner of Social
Security,

       Defendant.

CIVIL ACTION NO.: 2:18-cv-150

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Deborah Foresman ("the ALJ" or "ALJ Foresman") denying his claim for period of disability and disability insurance benefits and asks the Court to reverse and remand the ALJ's decision for rehearing.  Doc. 11-1 at 1.  Defendant asserts the Commissioner's decision should be affirmed.  Doc. 13 at 2.  Upon consideration of the parties' briefs, docs. 11, 13, 14, and those portions of the administrative record relevant to the issues raised, I **RECOMMEND** the Court **REMAND** the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

## BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") benefits on July 6, 2015, alleging he became disabled on December 1, 2009 due to post-traumatic stress-disorder ("PTSD"), depression, social anxiety, addictive personality, insomnia,

high blood pressure, obesity, and vitamin D deficiency.  Doc. 12-6 at 5–6 (R. 246–47); Doc. 12-7 at 3 (R. 258).  Plaintiff's date last insured was December 31, 2014.  Doc. 12-7 at 14 (R. 269).

After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing.  Doc. 12-4 at 4–7 (R. 97–100).  On November 2, 2017, ALJ Foresman conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified from Macon, Georgia.  Doc. 12-2 at 28–67 (R. 27–66).  On December 19, 2017, the ALJ issued an unfavorable decision, finding Plaintiff was not disabled from December 1, 2009 through December 31, 2014.  Id. at 23 (R. 22).  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.  Id. at 2–4 (R. 1–3).

Plaintiff, born on January 9, 1981, was 36 years old when ALJ Foresman issued her final decision.  Doc. 12-7 at 14 (R. 269); Doc. 12-2 at 23 (R. 22).

## DISCUSSION

### I.     The Administrative Law Judge's Initial Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Pursuant to the Act, the Commissioner has established a five-step

process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520,

416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity."  Id.

If the claimant is engaged in substantial gainful activity, then benefits are immediately denied.

Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments.  Id. at 140–41.  If

the claimant's impairment or combination of impairments is severe, then the evaluation proceeds

to step three.  The third step requires a determination of whether the claimant's impairment

meets or equals one of the impairments listed in the Code of Federal Regulations and is

acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful

activity.  20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v.

Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004).  If the impairment meets or equals one of the

listed impairments, the plaintiff is presumed disabled.  Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential

evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from

performing past relevant work, i.e., whether the claimant has the residual functional capacity to

perform his past relevant work.  Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693

(11th Cir. 2013).  A claimant's residual functional capacity "is an assessment . . . of the

claimant's remaining ability to do work despite his impairments."  Id. at 693–94 (ellipsis in

original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)).  If the claimant is

unable to perform his past relevant work, the final step of the evaluation process determines

whether he is able to make adjustments to other work in the national economy, considering his

age, education, and work experience.  <u>Phillips</u>, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  <u>Yuckert</u>, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of December 1, 2009 through his date last insured ("DLI") of December 31, 2014.  Doc. 12-2 at 19 (R. 18).  At step two, the ALJ determined Plaintiff was not under a disability, as defined in the Social Security Act, at any time from December 1, 2009, the alleged onset date, through December 31, 2014, the DLI.  <u>Id.</u> at 23 (R. 22).  Specifically, the ALJ found, "[t]hrough the date of last insured, the [Plaintiff] did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the [Plaintiff] did not have a severe impairment or combination of impairments."  <u>Id.</u> at 19 (R. 18).  Important to the Court's analysis, the ALJ determined Plaintiff had several medically determinable impairments through his date last insured of December 31, 2014 (depression, PTSD, anxiety, and alcohol dependency (in long term remission)); however, the ALJ determined Plaintiff did not have any severe impairment through this date.[1]  <u>Id.</u> at 20 (R. 19).

Plaintiff's medical evidence begins on December 31, 2014, his DLI.  On December 31, 2014, Plaintiff was seen by doctors at the Department of Veterans Affairs ("VA").  Doc. 12-2 at 46 (R. 44); Doc. 12-8 at 77–78 (R. 407–08).  Looking at the records from this visit, the ALJ

---

[1]     The ALJ found Plaintiff did not have a severe impairment, because "through the date last insured, [Plaintiff] did not have an impairment of combination of impairments that significantly limited the ability to perform basic work-related activities."  Doc. 12-2 at 20 (R. 19).  The Social Security Regulations state that a "severe" impairment is one that "significantly limits" an individual's ability to do basic work-related activities, and numerous courts have adopted and recognized this definition.  20 C.F.R. § 404.1520(a)(5).

found Plaintiff denied any suicidal or homicidal ideation but did respond to a questionnaire that

he had experienced symptoms of depression and PTSD.  Doc. 12-2 at 21 (R. 20).  The ALJ then

cited a routine checkup in February 2015 and said the records from this checkup did not mention

any ongoing issues, and no abnormalities were found on examination.  Id.  However, the ALJ

noted, Plaintiff did report symptoms of depression and offered a "vague" reference to suicidal

ideation "in the past," with no indication of when.  Id.  The ALJ also cited medical records from

April 2015, which she concluded showed no negative symptoms.  Id.

Additionally, the ALJ cited records from Plaintiff's visit with a psychologist on April 6,

2015.  Id.  The ALJ noted that at this visit, Plaintiff reported severe symptoms, including that he

had only left the house three times since 2012, he was prone to irritability and fighting prior to

2012, and he was angry and depressed but was considered a low risk of self-harm.  Id.

The ALJ also considered Plaintiff's records from other governmental agencies.  The ALJ

noted that Plaintiff's disability application was referred to a local disability determination

services agency ("DDS").  Id.  In her decision, the ALJ wrote, "The DDS concluded Plaintiff did

not have any severe impairments as of his [DLI]."  Id.  The ALJ also wrote, "[Plaintiff] requested

a reconsideration, but the DDS came to the same conclusion."  Id.  However, the ALJ noted

Plaintiff had also filed an application for Title XVI benefits, which was approved with an

effective date of July 6, 2015.  Id.  The ALJ stated she gave "great weight" to the DDS' findings.

Id.

In her decision, the ALJ explained "the question in this case is not the severity of

[Plaintiff's] impairments at any time, but rather what they were prior to his [DLI]."  Id.  She

noted the only medical records from the relevant period were from December 31, 2014, the very

day last insured.  Id.  Further, the ALJ said, "[A]bsent at least some objective evidence in

support, an individual's allegations cannot by themselves support a claim for disability." Id. However, the ALJ did point out that the DDS later found Plaintiff to have more severe limitations and approved his Title XVI claims. Id. The ALJ said she has no reason to conclude that these other findings were erroneous. Id.

The ALJ then explained how those later findings of disability relate to a finding that Plaintiff was not disabled as of his DLI. In doing so, the ALJ explained those later findings are supported by medical evidence. Id. at 22 (R. 21). However, the ALJ concluded there was no evidence to establish what Plaintiff's functioning might have been prior to December 31, 2014. Id. The ALJ noted the earliest evidence to support a finding of disability came from a VA disability rating from "some point prior to April 2015." Id. The ALJ stated the Social Security Regulations counsel ALJs to consider all available evidence, including evidence from other agencies. Id. The ALJ cited Bird v. Commissioner of Social Security, 699 F.3d 337 (4th Cir. 2012), in which the Fourth Circuit Court of Appeals stated that decisions from other agencies deserve substantial weight unless good reasons exist for giving them less weight. Id. The ALJ then stated there were good reasons to give the decisions of other agencies less weight. Id. The ALJ stated the other agency decisions came after Plaintiff's DLI. Id. The ALJ noted "the issue is solely whether the VA's determinations are consistent with the evidence prior to the [Plaintiff's] DLI," and here, "the record fails to show what if any level of disability[] may have existed prior to December 31, 2014." Id.

The ALJ concluded by saying there was simply no evidence from later time periods that would shed a light on Plaintiff's symptoms or functioning prior to December 31, 2014. Id. And, "[a]bsent some objective finding or medical opinion that these symptoms were present prior to [Plaintiff's DLI], the undersigned cannot create them." Id. The ALJ then acknowledged that

Plaintiff had medically determinable mental impairments through the DLI and cited the four broad areas of mental functioning in section 12.00C of the Listing Impairments, but concluded Plaintiff "had no limitations in any of these areas" prior to the DLI because "[t]here is no objective evidence in the record of any limitations in of these areas prior to the [Plaintiff's DLI]."  Id.  Because the ALJ concluded Plaintiff had no severe mental impairment through the DLI, she further concluded Plaintiff was not disabled through the DLI and ended her analysis at step two.  Id.

## II.    Issue Presented

Plaintiff argues the ALJ erred in not using a medical advisor to address her concerns about the onset of Plaintiff's impairments.  Doc. 11-1 at 13.  Plaintiff points to Social Security Ruling 83-20, which addresses situations where the onset date of a disability may need to be inferred by the ALJ, and describes circumstances where the ALJ should use of a medical advisor to assist in inferring the onset date.[2]  Id. (citing SSR 83-20, Titles II & XVI: Onset of Disability, SSR 83-20, 1983 WL 31249).  Plaintiff argues Ruling 83-20 applies in this case because Plaintiff's date last worked is far in the past and adequate medical records are unavailable. Plaintiff emphasizes that Ruling 83-20 explains that medical evidence from examinations occurring after a claimant's DLI can provide a basis for reasonably inferring whether the date of onset was prior to the first recorded medical examination.  Id.  Ruling 83-20 also states an ALJ

---

[2]       SSR 83-20 was rescinded and replaced by SSRs 18-01p and 18-02p, effective October 2, 2018. See SSR 18-01p; Titles II and XVI: Determining the Established Onset Date (EOD) in Disability Claims, 83 Fed. Reg. 49613 (Oct. 2, 2018).  However, SSR 83-20 remains applicable to Plaintiff's claim, as the new SSRs apply to applications filed on or after October 2, 2018 and to claims pending on or after that date, and "[SSA] expect[s] that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."  See 83 Fed. Reg. 49613, 49616.  Indeed, federal courts should apply the regulations that were in effect at the time of the ALJ's decision. See Jones v. Comm'r of Soc. Sec. Admin., 695 F. App'x 507, 508 n.2 (11th Cir. 2017) (analyzing an ALJ's decision using the Social Security Regulations in effect at the time of that ALJ's decision).

may look to other information (such as information obtained from family members) to ascertain why medical evidence from the relevant period is unavailable and to provide additional evidence regarding the course of the claimant's condition.  Id. at 14.  Plaintiff agrees the record lacks medical evidence from before December 31, 2014.  Id. at 15.  However, Plaintiff argues that substantial medical evidence from after the DLI, Plaintiff's own statements, and a statement from his ex-girlfriend all support an onset date prior to Plaintiff's DLI, and the ALJ should have utilized a medical advisor to assist with inferring the onset date under Ruling 83-20, given the lack of adequate medical records from before the DLI.  Id. at 14–17.

Defendant argues Ruling 83-20 does not mandate an ALJ utilize a medical advisor even when the disability onset date must be inferred due to inadequate medical records.  Doc. 13 at 12. Defendant asserts whether to utilize a medical advisor is always at the ALJ's discretion.  Id. at 14.  Defendant alternatively argues that, even if use of a medical advisor is required under Ruling 83-20 in some circumstances, the ALJ was not required to utilize a medical advisor in this case. Defendant points to language in Ruling 83-20 stating that a medical advisor should be called on when an ALJ can "'reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination.'"  Id. (citing SSR 83-20). Therefore, Defendant argues, Ruling 83-20 suggests the use of a medical advisor only when the medical evidence is "ambiguous."  Id.  Defendant contends the medical evidence in this case was not ambiguous and the ALJ had ample records before her to determine Plaintiff's disability onset date.  Therefore, Defendant argues, the ALJ reasonably inferred the onset date was not prior to the DLI, and no medical advisor was necessary to assist with establishing the onset date.  Id. at 15.

### III.     Social Security Ruling 83-20

"Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration."  Klawinski v. Comm'r of Soc. Sec. Admin., 391 F. App'x 772, 775 (11th Cir. 2010) (citing Sullivan v. Zebley, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, these Rulings are afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance."  Id. (citing B. ex rel. B. v. Schweiker, 643 F.2d 1069, 1071 (5th Cir. 1981)).

> For disabilities of a nontraumatic origin, SSR 83-20 states, in pertinent part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available.  In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

SSR 83-20.[3]  Additionally, SSR 83-20 provides the following instruction when precise evidence of an onset date is not available:

> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working.  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case.  This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge (ALJ) should call on the services of a

---

[3]     SSR 83-20 defines injuries of both traumatic and nontraumatic origin.  SSR 83-20 describes the onset of a disability of traumatic origin as one where an injury occurs and an individual is expected to die or expected to be unable to engage in substantial gainful activity from the time of the injury for 12 months.  Id.  Plaintiff has not alleged that he suffered an injury of traumatic origin, in which he was unable to engage in substantially gainful activity from the time of the injury onward.  See Doc. 12-2 at 45 (R. 44) (Plaintiff describing the possible origins of his PTSD in 2003 but also his subsequent work experience).  Of course, PTSD, by definition, arises from a "traumatic" experience, but that does not mean disability arising from PTSD has a "traumatic origin," as that term of art is used in SSR 83-20.

medical advisor when onset must be inferred.  If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

Id.[4]

## IV.   Application of SSR 83-20 to Plaintiff's Claims

A few salient points must be addressed before the Court conducts its analysis.  Plaintiff served in combat in the United States Marines and was discharged honorably in 2005.  Doc. 12-2 at 42 (R. 41).  Plaintiff worked from 2005 to 2009, at which point he contends his depression, PTSD, and anxiety impairments (and perhaps others) began interfering with, or altogether prohibiting, Plaintiff's ability to work.  Id. at 37–41, 64–65 (R. 36–40, 63–64).  From 2010 to 2014, Plaintiff contends he suffered from debilitating mental health issues and only left the house a couple of times during those years.  Id. at 48 (R. 47).  A statement by Plaintiff's ex-girlfriend, Ms. Wilcox, with whom he cohabitated during these years, confirms Plaintiff's statements. Doc. 11-2.  It is undisputed that Plaintiff sought no mental health treatment before November 2014.

Plaintiff states he nearly attempted suicide in November 2014, at which point Ms. Wilcox implored him to seek mental health treatment.  Doc. 12-2 at 46 (R. 45).  Plaintiff contacted the VA in November 2014, seeking mental health treatment, but it took approximately one month to set up the first meeting, which occurred on December 31, 2014, Plaintiff's DLI.  Id.

---

[4]      Ruling 83-20 provides a useful example of a situation where an ALJ must infer a disability onset date when there are not adequate medical records.  SSR 83-20.  The example describes a claimant who alleges disability due to a leg impairment and the only medical evidence is a single record from nearly a year after the alleged onset date, which shows the claimant has an impairment that is so severe it meets the listings.  Id.  In this example, because there were insufficient medical records, the hypothetical claimant's employer was contacted, who described the claimant's increasing—and ultimately final—inability to work.  Id.  Also in this example, a neighbor was also contacted, who described a conversation with the hypothetical claimant, who told the neighbor about his deteriorating legs.  Id.  A physician who was consulted, determined that current medical records, when combined with other evidence, allowed for the reasonable inference the claimant's onset date was prior to the date of his first medical examination. Id.

The VA conducted an initial mental health screening for Plaintiff on December 31, 2014, during which Plaintiff screened positive for PTSD and depression.  Doc. 12-8 at 78–82 (R. 408–12).  Plaintiff was then scheduled for a mental health evaluation in April 2015.  Before that appointment occurred, Plaintiff attended a routine examination with a VA doctor on February 5, 2015, at which point he again reported depression and anxiety and disclosed a history of suicidal and homicidal ideations.  Doc. 12-9 at 2–5 (R. 425–28).  Plaintiff attended his appointment with a psychologist on April 6, 2015.  Doc. 12-8 at 70 (R. 400).  Plaintiff was diagnosed with PTSD, unspecified depressive disorder, and alcohol dependency.  Id.

Plaintiff was given a service-connected disability rating by VA, but the details are somewhat hazy.  The ALJ stated in her decision that VA issued its disability rating of 60% (with 50% for PTSD) "at some point prior to April 2015" and noted that the rating was increased to 70% (all for PTSD) in July 2015.  Doc. 12-2 at 22 (R. 21).  The ALJ appears to have based her conclusion that VA made its initial determination "at some point prior April 2015" based on records associated with the December 31, 2014 visit, which state Plaintiff was "advised" he "does not have a SC rating," and records from Plaintiff's April 6, 2015 visit, which state Plaintiff has "rating of 60%, including 50% for PTSD"—suggesting the VA made its determination at some point between those two dates.  Id. (citing Doc. 12-8 at 19, 60 (R. 349, 390)).  Aside from these treatment notes, there was no evidence regarding when VA made its initial disability determination.  The ALJ inquired about the date of the rating during the hearing in this matter and stated she would like to review the disability rating letter.  Doc. 12-2 at 51 (R. 50).  The ALJ directed Plaintiff's counsel to obtain and submit the letter and left the record open for 30 days for counsel to do so.  Id.  The ALJ explained that Plaintiff's counsel could request more time to obtain the letter if needed.  Id.  Within 30 days of the hearing, Plaintiff's counsel wrote to the

ALJ and explained that he had been unable to obtain the VA disability award letter but was continuing to try to obtain the letter.[5]  Doc. 17-7 at 75–76 (R. 330–31).  The record does not contain any indication that the matter was addressed further.  The ALJ issued her decision eight days after Plaintiff's counsel's letter.

Plaintiff's claims under Titles II and XVI were also reviewed by the DDS.  With regard to Plaintiff's Title II claim, the DDS found "there [was] insufficient evidence in file to make a determination."  Doc. 12-3 at 13 (R. 78).  However, regarding Plaintiff's Title XVI claims, the DDS found "Onset date of [January 1, 2015] is supported as it is 3 months prior to claimants first mental health exam at the VA hospital."  Id.  taking these findings together, The DDS concluded that Plaintiff had severe PTSD, with an onset date of January 1, 2015, but the records were insufficient to determine if Plaintiff's PTSD was severe prior to January 1, 2015.

The ALJ concluded Plaintiff had the following medically determinable impairments through his date last insured of December 31, 2014: depression, PTSD, anxiety, and alcohol dependency (in long term remission), but that these impairments were not severe before the DLI.  Doc. 12-2 at 19 (R. 18).  The ALJ based this conclusion regarding severity exclusively on the absence of "some objective finding or medical opinion" demonstrating severity before the DLI.  Id. at 22 (R. 21).  Notably, the ALJ did not determine if Plaintiff's impairments ever became severe, before or after the DLI.  The ALJ did, however, acknowledge that the DDS concluded Plaintiff had severe limitations (namely, severe PTSD) with a supported onset date of January 1, 2015, and stated that "[t]here is no reason to conclude that this [conclusion] was erroneous . . . ."  Id. at 21 (R. 20).  To put it differently, the ALJ did not say whether Plaintiff was disabled after

---

[5]        With that communication, Plaintiff's counsel provided the ALJ with a printout from a VA webpage showing Plaintiff's 70% disability rating but with an effective date of July 6, 2015.  Doc. 12-7 at 75–76 (R. 330–31).  The printout contains no information regarding the date of the original rating.

the DLI, but she had no reason to disagree with the DDS finding that Plaintiff had severe

impairments as of January 1, 2015.  In contrast, the ALJ concluded Plaintiff's impairments were

not severe before the December 31, 2014, the DLI, based on a lack of "objective" evidence.  Id.

at 23 (R. 22).

With these facts in mind, the Court turns to whether the ALJ applied the correct legal

standard and whether the ALJ's findings are supported by substantial evidence.

Plaintiff argues the ALJ was required by SSR 83-20 to use a medical advisor because it

was necessary to infer the onset date of Plaintiff's disability.  Doc. 11-1 at 13–14.  Defendant

raises two arguments in response: (1) use of a medical advisor under SSR 83-20 is purely

discretionary, and never mandatory, and, therefore, the ALJ's failure to use one in this case

cannot constitute error; and (2) even if the decision to use a medical advisor under SSR 83-20 is

mandatory, it is only required in some circumstances, and those circumstances were not present

in this case.  Doc. 13 at 12.

Defendant's first argument is based on the plain language of SSR 83-20 (i.e., that the ALJ

"should" use a medical advisor) and a clarifying emergency message issued by the

Commissioner.  Doc. 13 at 14; Doc. 13-1.  Defendant cites no other authority for this argument.

The argument is contrary to the Eleventh Circuit's unpublished decision in March v. Massanari,

No. 00-16577, 265 F.3d 1065 (Table) (11th Cir. Jul. 10, 2001) (finding ALJ committed error by

failing to use medical advisor under SSR 83-20), and has been considered and rejected by district

courts in this Circuit.  See, e.g., Trimble v. Saul, No. 4:19-CV-00202, 2020 WL 1349569, at *5

(N.D. Ala. Mar. 23, 2020) (rejecting defendant's reliance on Commissioner's clarifying

emergency message); McManus v. Barnhart, No. 5:04-CV-67-0C, 2004 WL 3316303, at *9

(M.D. Fla. Dec. 14, 2004) ("Therefore, the ALJ's finding of no disability in this case is not

supported by substantial evidence and is due to be reversed and remanded to the commissioner for a further hearing so that the ALJ can obtains the assistance of a medical advisor on the issue of whether the Plaintiff was disabled prior to the DLI.").  Accordingly, the Court rejects this argument.

Because SSR 83-20 requires an ALJ to use a medical advisor in some circumstances, the Court considers whether the ALJ was required to do so in this case.  Under SSR 83-20, an ALJ is required to secure the services of a medical advisor to determine the onset or existence of a disability during the relevant period if: (1) the claimant suffers from a slowly progressing impairment or impairments of nontraumatic origin; (2) there is strong evidence the claimant became disabled at some time; and (3) the evidence during the relevant period is inadequate or ambiguous.[6]  Rojas v. Comm'r, Soc. Sec. Admin., No. 2:11-cv-124, 2017 WL 2130078, at *10 (M.D. Fla. May 17, 2017).  The Court evaluates each factor.

A.    **Whether Plaintiff Suffers From a Slowly Progressing Impairment of a Nontraumatic Origin**

First, Plaintiff suffers from slowly progressing impairments of a nontraumatic origin.[7] Specifically, the ALJ found Plaintiff suffered from a number of medically determinable

---

[6]      While the Eleventh Circuit has not addressed in any published opinion the precise circumstances in which an ALJ must use a medical advisor under SSR 83-20, district courts in this Circuit considering this issue have utilized the three-factor framework described in Rojas v. Commissioner, Social Security Administration, No. 2:11-cv-124, 2017 WL 2130078, at *5 (M.D. Fla. May 17, 2017).  See Trimble v. Saul, No. 4:19-CV-00202, 2020 WL 1349569, at *5 (N.D. Ala. Mar. 23, 2020) (remanding for ALJ to obtain medical advisor to assist in determining onset date of disability in accordance with SSR 83-20); Tracy M. v. Comm'r of Soc. Sec. Admin., No. 1:17-CV-04713, 2019 WL 1417228, at *14 (N.D. Ga. Mar. 29, 2019) (adopting similar reasoning) Martinez v. Comm'r of Soc. Sec., No. 2:17-CV-152, 2018 WL 4328217, at *7 (M.D. Fla. Sept. 11, 2018) (remanding for ALJ to obtain medical advisor to assist in determining onset date of disability in accordance with SSR 83-20).  This Court finds the reasoning in Rojas persuasive and adopts the same approach here.

[7]      Defendant does not address whether Plaintiff's impairments were "slowly progressing" for the purposes of SSR 83-20.  Rather, Defendant's argument is focused on whether the medical evidence was ambiguous, which the Court addresses.  The Court, nonetheless, addresses this factor.

conditions through his DLI (i.e., depression, PTSD, and anxiety)—none of which appear to the result of a traumatic injury.  Doc. 12-2 at 19 (R. 18).  These conditions are slowly progressing impairments.  SSR 83-20 mentions, but does not expressly define, "slowly progressing impairments."  Courts have commonly found impairments to be "slowly progressing" in cases similar to Plaintiff's, where some symptoms may occur over a period of time prior to the alleged onset.  See, e.g., Spellman v. Shalala, 1 F.3d 357, 362 (5th Cir. 1993) (depression and anxiety treated as slowly progressing impairments); Volley v. Astrue, No. 1:07-cv-138, 2008 WL 822192, at *13 (N.D. Ga. Mar. 24, 2008) (finding depression, anxiety, and obsessive-compulsive disorder were slowly progressive impairments).  Plaintiff testified—and other records reflect—he had been experiencing symptoms of PTSD and depression since his separation with the United States Marine Corps in 2005 and perhaps even during his service.  Doc. 12-2 at 38, 42–45 (R. 37, 41–44); Doc. 12-3 at 6 (R. 71); Doc. 12-8 (R. 350).  Thus, the Court finds that Plaintiff has slowly progressing impairments of nontraumatic origin.

### B. Whether There is Strong Evidence Plaintiff Became Disabled at Some Time

Next, there is strong evidence that Plaintiff became disabled at some time.[8]  As the ALJ pointed out, the DDS found Plaintiff had severe limitations and approved Plaintiff's Title XVI disability claims as of July 2015.  Doc. 12-2 at 21 (R. 20) (citing Doc. 12-3 at 19 (R. 84)).  The ALJ stated, "[T]here is no reason to conclude [the DDS's finding of disability] was erroneous."

---

[8]      The court in Rojas noted the Eleventh Circuit suggested in Caces v. Commissioner, Social Security Administration, 560 F. App'x 936 (2014), that SSR 83-20 may only be applicable after there has been an express finding of disability by the ALJ.  However, after reconciling various unpublished Eleventh Circuit opinions and district court decisions, the Rojas court concluded that SSR 83-20 applies even if the ALJ has not made a finding of disability, but only if three factors (i.e., slowly progressing impairment, strong evidence of disability, and inadequate or ambiguous evidence during the relevant period) are present.  This Court agrees with the Rojas reasoning and conclusion that there is no requirement that the ALJ make a disability determination to trigger the requirements of SSR 83-20.  To be clear, Defendant does not argue SSR 83-20 was not triggered because the ALJ made no disability finding.  To the extent there any such argument, the Court would reject it.

Id.  Indeed, the parties agree—and the record confirms—Plaintiff established a disability under Title XVI.  Doc. 11-1 at 7; Doc. 13 at 1.  Further, the ALJ noted the VA found in April 2015 that Plaintiff had a "service-connected disability for post-traumatic stress disorder."  Doc. 12-2 at 22 (R. 21).  Based on these two disability determinations, along with the medical evidence supporting these determinations, the Court finds there is strong evidence Plaintiff became disabled at some time.

In finding "strong evidence" that Plaintiff became disabled at some time, the Court does not suggest Plaintiff was "disabled" prior to his date last insured under Title II.  It is possible for Plaintiff to establish disability under Title XVI while still failing to satisfy the disability requirements of Title II.[9]  The Court expressly declines to make factual findings as to whether Plaintiff was disabled at any time under the Act.  The Court concludes only that Plaintiff's subsequent disability finding satisfies the second factor for determining whether the ALJ was required to use a medical advisor.

---

[9]       It is important to distinguish between Plaintiff's claims under Title II, which are the subject of the instant action, and his claims under Title XVI of the Act.  Title II and Title XVI claims are based on separate periods of eligibility, and therefore, separate evidence, and must be reviewed individually.  Baxter v. Schweiker, 583 F. Supp. 343, 346 (N.D. Ga. 1982).  Title II provides for some retroactive benefits from the date of the application whereas Title XVI does not.  SSR 83-20; Gullas v. Berryhill, No. 1:18-cv-719, 2019 WL 1261419, at *13 (N.D. Ohio Feb. 5, 2019).  Under Title XVI, the onset date will be established as of the date of the filing of the application, provided the individual was disabled on that date.  SSR 83-20.  Under Title II, it may be necessary to infer an onset date in the past.  Id.  Important here, in order to obtain disability benefits under Title II of the Act, a claimant must demonstrate he was disabled for twelve continuous months prior to the date last insured.  42 U.S.C. § 423(c).  Due to their differing eligibility periods, it is possible for an individual to establish disability under Title XVI (by establishing disability at the time of their application, which in turn becomes the date of onset under Title XVI), without establishing disability under Title II, which requires a date of onset prior to the date last insured.  This scenario is possible in situations like the instant case, where an individual's application date is after his date last insured.

**C.     Whether the Evidence During the Relevant Period was Inadequate or Ambiguous**

Defendant argues the medical evidence in this case was not ambiguous.[10]  Doc. 13 at 14–

16.  Defendant's argument appears to be that an absence of medical records from before the DLI,

combined with medical records from after the DLI (which confirm Plaintiff is suffering severe

impairments after the DLI but are silent as to whether the impairments became severe earlier),

constitutes ample and unambiguous medical records for the purposes of inferring an onset date.

Id.  This argument fails for several reasons.

Only a single medical record exists from the relevant period (coming on the last day of

that period), and this record is from an initial appointment.  Doc. 12-8 at 77–78 (R. 407–408).

This record showed Plaintiff screened positive for certain impairments but provides little or no

insight into the severity of the impairments.  Thus, the medical evidence from the relevant period

is inadequate, and due to the superficial nature of that single record, ambiguous.  Throughout her

decision, the ALJ notes multiple times that the medical evidence from before Plaintiff's date last

insured is inadequate.[11]  The ALJ recognizes there is only one record from the relevant period,

and that record is from the date last insured.  Doc. 12-2 at 21 (R. 20).  Later, the ALJ states that

"[t]he earliest evidence of mental health treatment is from April 2015, and there is insufficient

evidence to indicate what [Plaintiff's] functioning may have been prior to December 31, 2014"

and, "[i]n this case, the record fails to show what if any level of disability[] may have existed

---

[10]     Defendant's argument regarding the need for the ALJ to use a medical advisor relates almost exclusively to whether the medical records before the ALJ were inadequate or ambiguous.  This argument converges with the third factor described in Rojas, and the Court addresses that argument here.

[11]     Obviously, the ALJ's repeated statements that the medical records were inadequate is at odds with Defendant's argument that the medical records in this case were ample and unambiguous.

prior to December 31, 2014."  Doc. 12-2 at 22 (R. 21).  It is apparent from reading the ALJ's entire decision that she recognized the insufficiency of the medical records.

The ALJ's treatment of the DDS evaluation highlights the inadequacy and ambiguity of the evidence.  When Plaintiff first filed his application for benefits, his case was referred to a local DDS for evaluation.  Doc. 12-2 at 21 (R. 20).  In her decision, the ALJ noted that "[t]he DDS concluded that the [Plaintiff] did not have any severe impairments as of his date last insured."  Doc. 12-2 at 21 (R. 20) (citing Doc. 12-3 at 2–8 (R. 67–73)).  In her decision, the ALJ also noted, "[Plaintiff] requested a reconsideration, but the DDS again came to the same conclusions."  Id. (citing Doc. 12-3 at 23–28 (R. 88–93)).  The ALJ gave these DDS findings "great weight."  Doc. 12-2 at 21 (R. 20).

The ALJ misconstrues the findings of the DDS.  The DDS did not conclude that Plaintiff "did not have" any severe impairments as of his date last insured.  DDS records indicate Plaintiff's claims were initially denied because "there [was] insufficient evidence in [the] file to make [a] determination," doc. 12-3 at 6 (R. 71), and denied reconsideration because "[the medical record] is insufficient to assess the psychiatric impairment severity on or prior to the DLI (12/31/2014)."  Id. at 27 (R. 92).  The ALJ misinterpretation is significant for two reasons.  First, the ALJ gave the DDS findings great weight and referenced them several times in her decision.  While the ALJ frequently mentions a lack of relevant records, these DDS records are among the only ones she does consider, and they are the cornerstone of her analysis.  Second, this misapprehension of the DDS decision highlights an overriding concern: the ALJ incorrectly based her decision upon a lack of evidence, rather than determinative evidence or inferences from determinative evidence.  If the DDS looked at the evidence and made a pre-DLI disability determination based upon the substance of that evidence, the ALJ's decision may have been

18

supported by substantial evidence.  But the DDS did not determine Plaintiff "did not have" any severe impairments pre-DLI; it simply found the medical evidence was insufficient to determine what, if any, severe impairments Plaintiff had prior to his date last insured.  Importantly, the DDS determined Plaintiff had severe impairments with a supported onset date of January 1, 2015 (a conclusion the ALJ found not erroneous and one she gave great weight), but the ALJ concluded Plaintiff did not have any severe impairments on December 31, 2014, his DLI.  The ALJ failed to provide an adequate explanation for these conclusions.

Additionally, Plaintiff was given a service-connected rating by the VA, but there was not sufficient evidence regarding when the VA made its initial disability determination.  See Doc. 12-7 at 75.  The ALJ inquired about the date of the rating and stated she would like to review the disability rating letter.  Doc. 12-2 at 51 (R. 50).  But Plaintiff's counsel was unable to obtain the VA disability award letter before the ALJ issued her decision.  Based on that incomplete record, the ALJ determined the VA made its rating decision "at some point prior to April 2015" though it is unclear exactly when.  Id. at 22 (R. 21).  The ALJ granted the VA's findings less weight solely because "these determinations came after the [Plaintiff's] date last insured."  Id.  Thus, the date of the VA's rating was critical to the ALJ evaluation how much weight to give the rating, but the ALJ lacked sufficient information to determine when the rating was made.

The ALJ also lacked sufficient evidence regarding Plaintiff's delay in seeking treatment.  Plaintiff stated at the hearing that he did not seek mental health treatment between 2005 (when he was discharged from the Marines) and November 2014.  Doc. 12-2 at 46 (R. 45).  In November 2014, Plaintiff nearly attempted suicide, at which point his friends told him they would call the police if he did not seek help.  Id.  Plaintiff first contacted the VA on November 13, 2014, but Plaintiff was unable to set up his first meeting until a month later.  Id.  Plaintiff did

not give explicit reasons for not seeking medical care, but he did talk about how he had withdrawn from everyday life.  Plaintiff stated he stopped driving in 2008.  Id. at 54 (R. 53). Plaintiff discussed how he has limiting anxiety, especially before having to leave his home.  Id. Plaintiff also stopped leaving the house for social occasions after 2008, and he stopped leaving the house altogether between 2010 and 2014.  Id. at 57–58 (R. 56–57).  Plaintiff's medical records also suggest his mental health impairments interfered with ability to seek treatment, and only did so in 2014 at the insistence of his partner.  Doc. 12-8 at 71 (R. 401).  The ALJ made no mention of any reasons for Plaintiff's delay in seeking treatment.

Where there is an absence of medical evidence from the pertinent period, SSR 83-20 counsels ALJs to obtain information from a plaintiff's friends, family members, and former employers "to ascertain why" medical evidence is not available.  SSR 83-20.  The ALJ did mention some of Plaintiff's limitations, including that he rarely left his house.  Doc. 12-2 at 21 (R. 20).  However, the ALJ did not discuss Plaintiff's limitations in the context of explaining "why" pertinent medical evidence might be unavailable.  In fact, the ALJ offered no discussion at all as to "why" Plaintiff's medical records were lacking, or what, if any, impact that cause might have on her decision.

Similarly, both the ALJ and the Appeals Council failed to address the statements of Plaintiff's girlfriend Deborah Wilcox.  Plaintiff submitted a copy of Ms. Wilcox's statement to the Appeals Council on April 3, 2018.  Doc. 11-2.  The DDS also considered Ms. Wilcox's statements and described them in its evaluations.  Doc. 12-3 at 4–5, 11–12 (R. 69–70, 76–77). SSR 83-20 counsels ALJs to obtain information from third parties not just to explain "why" there may be an absence of medical records but also to "furnish additional evidence regarding the

course of an individual's condition."  SSR 83-20.  Here, the ALJ offered no discussion of Ms. Wilcox's letter or statements to the DDS.

Rather than determining a lack of relevant records merited additional investigation by a medical advisor (per the provisions of SSR 83-20), the ALJ determined a lack of records ended her inquiry.  It is true Plaintiff lacks records from the relevant time period, with a single exception, and all other medical evidence in the record comes from after the DLI.  But Ruling 83-20 specifically requires the use of a medical advisor in cases like this.  There is strong evidence that Plaintiff became disabled at some time due to a slowly progressing impairment of nontraumatic origin, and the evidence during the relevant period was insufficient; therefore, the ALJ was required to use the services of a medical advisor, but she failed to do so.  Because the ALJ failed to obtain the services of a medical advisor, the ALJ's decision was not supported by substantial evidence.  Accordingly, I **RECOMMEND** the Court **REMAND** the decision of the Commissioner under sentence four of 42 U.S.C. § 405(g) for the Commissioner to obtain a medical advisor pursuant to SSR 83-20 to assist the ALJ in determining the onset or existence of Plaintiff's disability prior to the date last insured.

### CONCLUSION

I **RECOMMEND** the Court **REMAND** the case to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.  I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

The Court instructs any party seeking to object to this Report and Recommendation to file specific written objections within **14 days** of the date on which this Report and Recommendation is entered.  Any objections asserting that the Magistrate Judge failed to address

any contention raised in the pleading must also be included.  Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985).  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 3rd day of September, 2020.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA